has appealed the trial court's denial of his motion to dismiss the indictment based on a defective deportation under Mendoza-Lopez. Okay. This is a conviction for what we call IRAD, illegal reentry after deportation.   Thank you, Mr. Chief Justice. Your Honor, under 8 U.S.C. section. And your challenge is to the deportation itself. That is correct. And we assert on appeal that Judge Hagerty very properly found due process violations in the deportation hearing in the form of an effective waiver of appeal. Number one. Did the government acknowledge that in their brief? I'm sorry. Did I acknowledge that? Did the government? Yes. I believe they did. If I read it right, they'd say, well, okay, yeah, that was a problem. Not the necessarily the procedure prior to that where everybody stood up and admitted they'd come into the country, et cetera, but the appeal right. Right. So then are we really left with a prejudice issue? We're focused on the prejudice issue. Yes, we are. There are two aspects to Judge Hagerty's ruling that we quibble with. First of all, we claim that the mass non-personal waiver of or admission of the illegal entry was a violation of due process, and Judge Hagerty did not agree with that. But more important, we do agree. Now we're going to the question of whether it was a due process violation. I understood Judge McHugh's question to you to be whether there was prejudice. Yes, yes. And moving to the ---- But if you had one due process violation, whether it was that one or the appeal, you only need one, right, to ---- Right. Although, although, it may bear on the issue of what is the showing here that's needed for prejudice, because really what we have, if you accept our claim that there was no ---- there was due process violation the whole way along, all the way to that third issue, which was the mass admission with respect to the illegal entry, then you really have nothing left. You really have no deportation hearing to speak of. You have sort of a mass meeting, and this man, if this hearing had been conducted properly, would not have been deported. And so our argument, if you accept the ---- And why wouldn't your client have been deported, if he had an entry? We claim he would not have been deported because of those multiple errors in the deportation proceeding, so that really there are no deportable bases left. There is no basis upon which this man would have been deported. Okay. I'm missing something. Let's suppose that the judge at the deportation hearing had held individual hearings. So what would have happened there that would have caused that immigration judge to say, oh, Mr. Mendoza-Rodriguez, we are not going to deport you? I don't know why you got swept up in this, but you're obviously not deportable. If there had been individualized responses in conformity with due process under Mendoza-Lopez, then this would be a different case. But what we're dealing with here ---- But that's what we're trying to figure out. What's the problem? Where's the error? What's the prejudice to your client? Well, the prejudice ---- He admits that he was not admissible. The IJ did go through some individual inquiries. He didn't do it for all of them. The appeal is declaring one, but for a number of them, he did individualize the inquiry. Where's the problem? Your client ---- I haven't seen one word in your brief that suggests that your client says, I didn't come into the United States illegally. There is, on the record evidence before the immigration judge, no bar to relief in the form of voluntary departure. There is none. If you accept Judge Hagerty's rulings and the government has not cross-appealed, there is no aggravated felony that is on the record, that is record evidence. And that's probably, I think, the focus here for this Court. And the most important argument that I have for you is that the government here is advocating that we go beyond the record evidence before the immigration judge to establish prejudice. But what if you didn't have to get that far? There's two aspects to the possible prejudice. One is an extra record aggravated felony, and then the other has to do with they knew he had these drug convictions, and he spent a number of months, days, certainly more than 120 days in jail, in which he wouldn't meet the moral character. So why isn't that a disqualifying factual problem? If the analysis is made based upon the evidence before the immigration judge, there can be no conclusion that he is barred from voluntary departure. Judge Hagerty specifically found that these convictions, these drug convictions Go back and say that sentence again. I want to make sure I understood you. If what? If we look at the record as corrected by Judge Hagerty, that is, these drug convictions were not controlled, they were not predicate convictions for immigration, for purposes of immigration laws to support deportation, all right? They didn't specify the drugs. They didn't they and Judge Hagerty specifically found this, that they were not, they did not refer to the particular controlled substance so that it could be identified as part of the Federal Controlled Substances Act, which is required in the immigration laws. Isn't that required for moral character determination?  It is. And so if you accept that, then those, those, those allegations, and there is no allegation with respect to the amount of time in custody. There's no evidence of that whatsoever. If you look at the order to show cause and what's on the record, there simply is insufficient information to draw a conclusion that that would have prohibited relief. So you, the only way that you can find that there is no prejudice in this case is to go beyond the record of the immigration judge, and that's unprecedented. The government is really asking this court to be the first court to do that. And the reason that is not a good idea is because you need to look back at Mendoza-Lopez, and the whole idea behind that case is that if there is going to be a deportation proceeding that is an element in a criminal case, it has to conform to due process. And if we could come back and resurrect and correct later on and supplement that, then we would not have any degree of finality that would be associated with the deportation proceeding for Mendoza-Lopez. I mean, we simply, we could just, we could just put people in a van, take them down to the border. I see I have not much time remaining. I'm going to stop. Sotomayor, that's your regular time. Go ahead. Oh, that's within the 8 minutes. I got you. The reason the case is troubling is that if there is a due process violation, you then have to say, well, was there prejudice as a result? And what I'm kind of grappling with is when is that prejudice determined or in what arena? Because is that prejudice solely related to that proceeding at that moment and that record, because typically we wouldn't go beyond the record, or is the prejudice related to the fact that he has all the qualifications to be deported and then some? In other words, what's the benchmark and what's the law for how we decide? The benchmark, I don't think there's any other case like this. No. And there is, the government provides no case that suggests that there is, that it's proper to go beyond the record of the agency or the immigration judge. And that's precisely my point. You have to make the determination based upon that record. Otherwise, you've undercut the Mendoza-Lopez. You've undercut the holding of that case, that we've got to look at the due process violation of the deportation proceeding itself on that record, and if it doesn't cut it, then it can't form the basis for an element of the offense. And it's just that simple. Okay. And I think it is, it's a, I'm going to quote from Mendoza-Lopez, because I think I've grappled with this as well, but if you go back to that case, it says, If the statute, that's the 1326 statute, envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirements of due process. Now, the fact is, they didn't get it right. The immigration court has to, has to live with the result. We have to look back to that proceeding. If it doesn't comport with due process, it cannot put somebody in jail based on a criminal offense, an element of criminal offense later. Okay. Down to how, what does she have left? It would be 30 seconds. You have about half a minute for rebuttal. Should be plenty of time. Counsel? Thank you, Your Honor. May it please the Court, Kelly Zusman, appearing on behalf of the United States. There is no prejudice in this case, and the argument that's being advanced by the defendant here is that there was a due process violation, so therefore there was prejudice. This Court has expressly rejected that position numerous occasions. We've cited you to Bahena. Proetovar was an en banc decision from this Court. The due process violation, which we have conceded for purposes of this appeal relative to the mass waiver of rights, no question. There was a due process violation in this deportation proceeding in 1996. The problem here is there is no prejudice, and that's because in 1996 this was not Mr. Mendoza's first deportation, nor was it his second. It was his third. Voluntary departure was something available to people who were lawful permanent residents. Mr. Mendoza was never a lawful permanent resident. He's had over five controlled substance convictions, two from the State of Oregon. And I think one thing that's critical to keep in mind about the suggestion that we're going beyond the record is that the two convictions that he sustained in the State of Oregon in 1994 were under different aliases. Well, here's the problem that I'm grappling with. This reminds me a little bit of the Taylor and when you have the modified categorical approach, right? And sometimes we say to the government, you know, I'm sure it's there. You just didn't bring in the right documents. And when I say you, I mean them, really, okay? The, you know, ICE or immigration or DHS or whoever it happened to be back then. So that's the situation we're in. They just didn't bring in the right pieces of paper. Why isn't that a fair analogy? Well, and the reason that they didn't bring in the right pieces of paper is because in 1996 everyone assumed that simple possession was an aggravated felony. There was no impetus to look beyond that. But I know what that's like saying in the Taylor thing. Well, everybody assumed that it was a categorical crime, and then we found out the Ninth Circuit or the Supreme Court said, because they're always parsing all these things out, that it wasn't. That doesn't, like, get you off the hook for putting in the right documents, does it? And I don't think it's a suggestion of not putting in the right documents. We actually had this. Making the correct allegations. Well, we did. There is no question that he had entered without inspection, and that was one of the things that he admitted at the hearing, although through a mass proceeding rather than an individualized proceeding. Right. Except that he was asked individually and given a time and a date and a place. So the judge did ask him individually and he did answer yes. That's correct. So here he came without inspection. We know that. Correct. Okay. And that was a viable, perfectly legal basis for deportation. If that was all they had alleged in that order to show cause, you have entered without inspection. And the prior deportations themselves were prima facie proof that he had entered without inspection. Okay. So you're saying that he, you don't need, you don't need any of the criminal allegations to sustain a lawful deportation. That's correct. That's absolutely correct. And then you're saying because he's not a lawful permanent resident, that voluntary departure doesn't apply to him under the immigration law. That's also correct. And I understood Ms. Burgesson's argument to be that voluntary departure would have been available to him but for the criminal, but for his prior criminal convictions. And the judge does ask him, the immigration judge does ask Mr. Mendoza whether he was, whether he was convicted in I think Salt Lake City of possession of illegal drugs. He answers yes. Ms. Burgesson's answers, I understood it, was that simple response wasn't enough to deprive him of the possibility of voluntary departure. And my response is, Ms. Burgesson is partially correct. Only lawful permanent residents were eligible for voluntary departure. However, there was another form of relief from deportation called cancellation of removal. And the problem is Mr. Mendoza was also not eligible for cancellation of removal because he could not establish he was a person of good moral character. But the reason why. Okay. Let's do that one. So to be, then the reason for that may be because he has these drug convictions. But then his lawyer says, but those drug convictions, at least what's on the record, don't sustain, you know, that you don't know what the drug is and whether it falls under the federal law. Therefore, he's not kicked out automatically under the, you know, failure to have good moral character. That's correct. What's my response to that? Well, and that's where Judge Hagerty said that because the controlled substance convictions from Utah failed to specify what the controlled substance was, we can't count those. And that's why we then turned to the validity of the Oregon conviction. But the Oregon conviction, I mean, then you get now we're back into the question of whether you can make a determination of prejudice outside the record of the deportation hearing. And I. What's your best authority for that? First off, well, I don't believe it's ever come up before where it's been the government that is trying to introduce evidence beyond the record to show the lack of prejudice. What I can point you to, though, is instances in which defendants have relied upon evidence outside the record in order to attempt to demonstrate prejudice. In my brief, I cite the court to the example of the defendant who wants to show that the prior deportation was invalid because he received ineffective assistance of counsel. I can also point you to the Barraza decision, which was cited within Nicholas Armenta, and Barraza is cited in our 28-J letter. In that case, the defendant came forward with an affidavit from his attorney trying to establish prejudice that he had actually been here for ten years. The court considered that evidence. The United States didn't object to that. The limitation of the record brings us into APA law, which was, of course, the first case you heard this afternoon. APA has nothing to do with the constitutionality of a prior deportation or a prior conviction. The APA's limitation to the record before the agency is a creature of statute. Section 706 of the APA refers to the record. The cases cited by the defendant in support of this APA standard of review, that's a very novel argument. Trying to impose it on a criminal case in which we're doing a collateral review limited to determining whether or not that prior deportation meets constitutional standards and demonstrates prejudice. Why wouldn't it then be more akin to this Taylor analysis of whether it falls into categorical or modified categorical, and we say, you know, we can only go with the record one way or the other. And, you know, we realize, like we'll say, you know, my God, the nature of the sexual assault, we know based on sort of anecdotal that it had to have been a violent felony. But we can't really look at that because all we can look at is this little piece of paper with these numbers and this description. Why isn't it like that? I think the problem is that no court has ever held that in trying to establish prejudice, which is the defendant's burden, not our burden, it's the defendant's burden to prove that he had some plausible basis for remaining in this country and not being deported. And it's our position that he cannot do that because there is no question that because of his Oregon conviction for distribution of a controlled substance, there was nothing, there was no way he could have remained in this country. So what do we call this theory? The theory of immigration inevitable discovery? That the I.J. would have inevitably discovered the government, would inevitably have discovered the Oregon conviction or convictions, and he would have been deportable in any event? Your Honor, if I might suggest that I think the proper analysis here is that the defendant in this case cannot establish that he was prejudiced by anything that took place during that 1996 deportation because he was categorically ineligible for any relief. He was going to be deported. Based on something completely outside the record. And in part, based upon the fact that he used multiple aliases. That Oregon conviction was under the name of Venejas. And so I think that what's troubling to me is the notion that because someone gives a false name. Let's say it wasn't false. Let's say it was his name and they just, as often happens, they missed it. Then we'd have a, then your argument wouldn't sustain. I don't think it's dependent upon that. I think that's an aggravating factor, but it's certainly not dependent upon it. Again, I go back to the Supreme Court has said we are going to allow collateral attacks on prior deportations in limited circumstances. And it is the defendant who bears the burden of establishing that there was a due process violation and that he was prejudiced thereby. Where a defendant concedes, admits that because he sustained a prior conviction, which is an aggravated felony, which renders him ineligible for any relief from deportation, he cannot show prejudice. And prejudice is what is required, and it wasn't established here. Okay? All right. Thank you. Thank you for your argument. Good timing. You have about a half a minute left. Mr. Mendoza-Lopez is not arguing that the Court dispense with the requirement of a finding of prejudice. And make no mistake, I'm not making that argument. What we are suggesting is that that issue should be determined by the record. The record before the immigration judge. Otherwise, a final deportation hearing is going to be forever unfinal. And that simply does not square with the reasoning behind Mendoza-Lopez. Okay. Thank you. Thank both sides of the argument. Very interesting case. It will be submitted for decision, and we'll proceed to the last case on the argument calendar this afternoon, which is Posey v. Ponderay School District. Counsel present? Beautiful.
judges: Hawkins, McKeown, Bybee